**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**WINCHESTER DIVISION**

| | | |
|---|---|---|
| **HUNTER TRIMBLE, on behalf of himself and all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case no. 25-cv-00056** |
| **PLAYTIKA LTD., and PLAYTIKA HOLDING CORP.,** | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Hunter Trimble an adult resident citizen of Coffee County, Tennessee, on behalf of himself and all others similarly situated in the state of Tennessee, files this amended state-wide class action complaint against Playtika Ltd. and Playtika Holding Corp. ("Playtika").

## INTRODUCTION

1. This state-wide class action seeks recovery of illegal gambling losses by Tennessee residents who played Playtika's illegal online gambling games.

[1] This amendment is the first amendment in federal court and is filed within 21 days of Playtika's motion responding to the prior complaint. It is therefore filed as of right, pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.

Plaintiff seeks, on his own behalf and on behalf of all similarly situated Tennessee residents:

(1) a ruling that Playtika's games violate federal law, and that Playtika's online terms of service set out the terms and conditions under which the illegal gambling is conducted;

(2) a ruling that the online terms of service and the arbitration provision contained in the terms of service are each void as violative of Tennessee law;

(3) recovery under Tennessee's gambling loss recovery statute, for a class of players of the games under Section 29-19-104 of the Tennessee Code.

**PARTIES, VENUE, AND JURISDICTION**

2. Plaintiff Hunter Trimble is an adult resident citizen of Coffee County, Tennessee.

3. Defendant Playtika, Holding Corp. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Henderson, Nevada. It does business through its online gambling games throughout the United States, including throughout the state of Tennessee and in Plaintiff's home county. It does not have a physical location in the state of Tennessee.

4. Defendant Playtika, Ltd. is a business entity organized and existing under the laws of Israel and headquartered in Herzliya, Israel. It does business

through its online gambling games throughout the United States, including throughout the state of Tennessee and in Plaintiff's home county. It does not have a physical location in the state of Tennessee.

5. Because Playtika does not have a physical location in Tennessee and plaintiff is from Coffee County, within this district and division, venue is proper in this court.

6. This Court has personal jurisdiction over Playtika because the company has sufficient minimum contacts to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiff's claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

7. Playtika's minimum contacts with the state of Tennessee including ongoing contractual relationships created by the terms and conditions on the Defendants' apps. Playtika required Hunter Trimble, along with all other Tennessee customers who played the game, to agree to these terms. Both the Sixth Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper "where a defendant 'has created continuing obligations between himself and the residents of the forum." Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 551 (6th Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

8. Playtika's contacts with Tennessee also include direct solicitations and other communications, initiated by the company, with customers in Tennessee. These include in-game messages and advertisements sent to players. Further, social and sweeps casino companies specifically target individuals who spend money on the apps, including by sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed July 11, 2025). These communications and advertisements specifically directed by Playtika to particular current and prospective players in Tennessee constitute purposeful contacts with the state.

## RELEVANT FACTS

### A. Defendant's Gambling Games

9. Defendant Playtika is a game developer that has created games that simulate slot machines and other gambling games, and made them available to the Tennessee public through its smartphone applications, including, but not limited to Slotomania, Caesar's Casino Official Slots, House of Fun Slots Casino, and Vegas Downtown Slots.

10. The games in Playtika's apps are games of chance that simulate slot machines and other casino-style games, including blackjack, roulette, and poker. Below is a typical example of such games:




11. Playtika's games operate with virtual coins that can only be used to play the games. Customers initially receive some coins for free. They risk those coins on the games of chance in an attempt to win more coins. If they lose, the lose the coins wagered. If they win, they win additional coins allowing them to play longer. When a consumer runs out of coins entirely, the apps have coins available for purchase, which allow the player to continue playing the game with full functionality. Customers who purchase these coins do so to risk them on further games of chance.

12. Plaintiff Hunter Trimble has spent money to purchase virtual coins from Playtika, and used those coins to play Playtika's gambling games. Mr.

Trimble's purchase was made within the ninety days preceding the filing of the first complaint in which Mr. Trimble asserted a claim.

### B. Defendant's Games Have Gravely Harmed the Classes and the State of Tennessee.

13. The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendant's here for a minimum of two hours a day. (Ex. 1, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)). Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

14. NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's

aggressive marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendant's] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said."

15. It is scarcely a defense that "social casino" slot machines do not afford gamblers the opportunity to win real money because the currency in such games consists of "virtual coins" that are only redeemable as additional opportunities to play the games. This is so for at least two reasons. First, those with gambling addictions have been documented to lose thousands of dollars playing these slot machines, to the point of financial ruin and marital strife, even though these gamblers could never win their money back – only the opportunity for additional spins at the slot machine. Second, the law in many states, including Tennessee, states that the opportunity to win additional playing time is a "thing of value" such that gambling for more playing time is illegal gambling even though the gambler never has the opportunity to win her money back. See State v. Vance, 2004 WL 746296 (Tenn. Ct. App., Knox 2004) (holding that additional amusement is a thing of value under Tennessee's gambling statutes); Tenn. Code § 39-17-501(2).

16. Anecdotal reports of gambling addictions in connection with social casino games like defendant's are buttressed by recent scientific studies that confirm that social casino apps appeal to gambling addicts in much the same way as real Las Vegas-style casinos, and have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of social casino gamers between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021). More broadly, over half of social casino players reported gambling on a regular basis. (Id.). Because of this overlap, traditional gambling operators are now heavily invested in defendant's industry as a way to port players from social casino games to real casinos. (Id.). One study showed that an astonishing 58.3 percent of gamblers seeking treatment for gambling addiction "reported social casino games as being their first introduction to gambling activities." Kim, "Social Casino Games: Current Evidence and Future Directions," Gambling Research Exchange Ontario.

17. Companies in the social casino industry, including Defendant, have extracted tens of millions of dollars from Tennessee's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to the Tennessee treasury. Instead, the money extracted from Tennessee's economy

ends up in places like Defendant Playtika Ltd's home country of Israel, as well as Canada, Hong Kong, Cyprus, and Australia, where other major companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf. Even if Tennessee consumers represent but a small percentage of that total, the reality is that a great deal of money is being siphoned from the state's economy each year.

## CLASS ALLEGATIONS

18. Plaintiff Hunter Trimble seeks to certify a class for which he will pursue claims in all counts below, pursuant to Rule 23 of the Federal Rules of Civil Procedure. This class is defined as follows:

> All Tennessee residents who have spent money to purchase virtual coins through Playtika's smartphone applications, including but not limited to Slotomania, Caesar's Casino Official Slots, House of Fun Slots Casino, and Vegas Downtown Slots, within the 90 days preceding the filing of the complaint and continuing to a date to be set by the Court following certification. All employees of the Court and plaintiff's counsel, and their families, are excluded.

19. The proposed class meets the numerosity requirement in Rule 23(a)(1), because there are so many class members that joinder of all of them in this case is

impracticable. There are thousands of Tennessee residents who have spent money to play the game and are thus members of the class.

20. The class also satisfies the commonality requirement of Rule 23(a)(2) because there are central questions of fact and law that are common to the class. Such common question include, at a minimum, (a) whether Playtika's games are games of chance; (b) whether free play is a thing of value under Tennessee law; (c) whether Playtika's games constitute illegal gambling under Tennessee law; (d) whether members of the players class are entitled to recover their losses pursuant to Section 29-19-104 of the Tennessee Code; and (e) whether Playtika's terms of service and the arbitration agreement contained therein are each void under Tennessee law.

21. The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the claims of Plaintiff Hunter Trimble are typical of the claims of the class members. Both Plaintiff and the class members lost money in an effort to win additional playing time and amusement on Playtika's illegal gambling games.

22. The named plaintiff will fairly and adequately represent the interests of the classes pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced trial counsel with decades of experience litigating class cases.

23. Plaintiff seeks to maintain these classes pursuant to Rule 23(b)(3), which allows for class actions where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

24. The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The ***only*** individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining Playtika's own records.

25. Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual

amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all.

26. For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

27. It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

28. Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members is contained in Playtika's own records concerning users' purchases and in the records of the platforms that facilitate the service. Defendant and the platforms defendant uses to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in Tennessee, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

## PLAYTIKA'S GAMES VIOLATE TENNESSEE AND FEDERAL LAW

29. Other than the state-run lottery, all forms of gambling are illegal in Tennessee.

30. “Gambling is contrary to the public policy of this state and means risking anything of value for a profit whose return is to any degree contingent on chance, or any games of chance associated with casinos, including but not limited to, slot machines, roulette wheels and the like.” Tenn. Code Ann. § 39-17-501(2).

31. The Tennessee code further defines “profit” in the definition quoted in paragraph 33 as “anything of value in addition to the gambling bet.” Tenn. Code Ann. § 39-17-501(8). Under Tennessee law, games of chance are thus illegal if a patron pays money for the chance to win anything of value.

32. Case law has defined a thing of value to include free or extended playing time. See State v. Vance, 2004 WL 746296 (Tenn Ct. App., Knox. 2004) (“The Court explained that the chips that were randomly awarded by the vending machine were ‘things of value’ under the gambling statutes because the chips allowed the customer to continue the operation of the machine for amusement.”) (citing Painter v. State, 45 S.W. 2d 46 (Tenn. 1932). Likewise, the virtual coins in Playtika’s apps allow the customer to continue the operation of the game for amusement.

33. Because the gambling games are illegal in Tennessee, when such games are played in Tennessee, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set forth in Count One below.

## CLAIMS FOR RELIEF

**COUNT ONE: SEEKING A RULING THAT THE GAMBLING IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANT'S TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT**

34. Plaintiff incorporates the factual and legal averments of Paragraphs 2-33 by reference as if fully set forth in this count.

35. Plaintiff seeks, on behalf of himself and the class, a ruling that:

a. Playtika's conduct in Tennessee is an "illegal gambling business" under 18 U.S.C. § 1955;

b. The "Terms of Use" found in Playtika's apps, which are available at the website https://www.playtika.com/terms-service/, set out the terms and conditions under which Playtika's illegal gambling is conducted.

c. The Terms of Use are unenforceable in federal court.

36. The relevant language of 18 U.S.C. Section 1955 states:

> **(1)**"illegal gambling business" means a gambling business which—
>
> > **(i)** is a violation of the law of a State or political subdivision in which it is conducted;
> >
> > **(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> >
> > **(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

28 U.S.C. § 1955(b)(1).

37. As to the first element required to find an illegal gambling business under Section 1955 Playtika's games are in fact illegal gambling under Tennessee

law, which bars spending money for the opportunity to receive anything of value, contingent upon chance.

38. As to the second element under Section 1955, Playtika certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

39. The third element of Section 1955 is also met. Playtika has both been in business for more than 30 days in Tennessee, and has had gross revenue of more than $2000 in a single day. Playtika has conducted business in Tennessee for multiple years, and, upon information and belief, has collected gross revenue of more than $2000 in a single day on multiple occasions.

40. Because all three elements of Section 1955 are met, Playtika's conduct in Tennessee constitutes an illegal gambling business, and Claimant's first request for a ruling on this issue is due to be granted.

41. The second request should also be granted. The "Terms of Use" found on Playtika's websites, do in fact set out the terms and conditions under which the illegal gambling thereon is conducted. Plaintiff expects Playtika will challenge the words "illegal" and "gambling" in this request, but will likely not dispute the fact that its terms and conditions govern the operation of the games and all of the activity it conducts in Tennessee.

42. Because the contract, as described above, is illegal pursuant to federal law, namely 18 U.S.C. § 1955, federal courts, pursuant to United States Supreme Court precedent, are not permitted to enforce the contract in aid of such illegal activity. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

## COUNT TWO: SEEKING A RULING THAT DEFENDANT'S TERMS OF SERVICE AS A WHOLE, THE ARBITRATION PROVISION ITSELF, AND THE DELEGATION PROVISION THEREIN ARE EACH VOID UNDER TENNESSEE LAW

43. Plaintiff incorporates the factual and legal averments of Paragraphs 2-42 by reference as if fully set forth in this count.

44. As set forth above, defendant's games are governed by terms of service that facilitate the illegal gambling, namely Defendant's Terms of Use. The Terms of Use are therefore void pursuant to Section 29-19-101, which states: "All contracts founded, in whole or in part, on a gambling or wagering consideration, shall be void to the extent of such consideration."

45. Playtika's terms and conditions also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct, and are thus void and unenforceable. For example, Playtika's terms of service purportedly bar customers from seeking, in arbitration or litigation, "recovery of losses or damages (whether for yourself or others) incurred by a third party." https://www.playtika.com/terms-service/ at § 17(g). As explained below, Tennessee's statutory scheme allows for the recovery of losses by third parties to be paid to family members. Tenn. Code Ann. § 29-19-105. Thus, this provision attempts to exculpate Playtika from the clear consequences of its intentional illegal activity in Tennessee.

46. Plaintiff seeks, on his own behalf and on behalf of the class, a ruling that Playtika's terms of service, and, separately, the arbitration agreement contained therein, are each void under Tennessee law.

**COUNT THREE: CLASS CLAIMS FOR INDIVIDUAL LOSSES**

47. Plaintiff incorporates the factual and legal averments of Paragraphs 2-46 by reference as if fully set forth in this count.

48. The Tennessee Code provides a statutory civil cause of action to recover money paid and lost due to gambling. Section 29-19-104 provides:

> Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days from the time of such payment or delivery.

Tenn. Code Ann. § 29-19-104.

49. On behalf of themselves and the class described in Paragraph 20, above, Plaintiff Hunter Trimble seeks for each class member recovery of the amount paid for purchases through Playtika's apps during the ninety days preceding the filing of this complaint.

**PRAYER FOR RELIEF**

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1. Take jurisdiction of this cause;
2. Following discovery, certify a class of players of the game to pursue the claims in counts 1, 2, and 3 herein as a class action;
3. Appoint the undersigned as Class Counsel and named plaintiff Hunter Trimble as class representative;
4. Enter a final judgment against Playtika awarding plaintiff Hunter Trimble, and the members of the class, a refund of the money they spent purchasing virtual coins to play Defendant's illegal gambling games in the period between 90 days prior to the filing of the complaint and the entry of judgment under Section 29-19-104 of the Tennessee code;
5. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgement in favor of the class;

6. Award the named plaintiff a reasonable sum of money for services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;

7. Award interest and costs; and

8. Award any other relief to which the Court finds plaintiff and the classes are entitled.

Respectfully submitted this 12th day of January, 2026,

/s/ Dargan M. Ware
One of the attorneys for Plaintiff

**COUNSEL:**

Dargan M. Ware
DAVIS & NORRIS, LLP
2154 Highland Ave. South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com

Garth R. Segroves
113 West Moore Street
Tullahoma, Tennessee 37388
Telephone: 931.393.4366
Facsimile: 931.259.4466
garth_segroves@att.net

Jeffrey L. Bowling
BEDFORD, ROGERS & BOWLING, P.C.
303 North Jackson Street
P.O. Box 669
Russellville, Alabama 35653-0669

Telephone: 256.332.2880
jeffbrbpc@bellsouth.net

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record through the CM/ECF system of the United States District Court for the Eastern District of Tennessee on January 12, 2026.

/s/ Dargan M. Ware
One of the Attorneys for Plaintiff